FILED
MAR 0 5 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALICE BIGGS                                              CV. 08-941-PK

        Plaintiff,                                    FINDINGS AND
                                                        RECOMMENDATION

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

_____

PAPAK, Magistrate Judge:

      Plaintiff Alice Biggs challenges the Commissioner's decision denying her application for

disability insurance benefits and supplemental security income under Title II and Title XVI of

the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). The

Commissioner's decision should be remanded for further proceedings, for the reasons set forth

below.

## BACKGROUND

      Alice Biggs was born in 1961. (Tr., #17, at 19.) She graduated from high school. *Id.* at

Page 1 - FINDINGS AND RECOMMENDATION

21. Biggs' work history consists mainly of clerical jobs. *Id.* at 100, 107-108. She testified that she last worked at a fast food restaurant after she moved to Nevada in July 2007, but was fired because she could not stand for long periods of time or keep the required pace. *Id.* at 24, 59.

Biggs filed applications for disability benefits and supplemental security income in June 2006, alleging January 1, 2003 as her onset date. *Id.* at 79-87. After the Commissioner of Social Security denied her application initially and upon reconsideration, Biggs requested a hearing before an administrative law judge (ALJ). *Id.* at 58. The ALJ held a hearing in January 2008 and took testimony from Biggs, who appeared without an attorney, and from a vocational expert. *Id.* at 8. The ALJ issued a decision finding Biggs not disabled because she could perform her past relevant work as an office worker, a phone system operator, and a data entry clerk. *Id.* at 5-14.

The ALJ applied the five-step sequential disability determination process set forth in 20 C.F.R. §§ 404.1520 and 416.920. *Id.* at 9-14. At step one, the ALJ found that Biggs had not engaged in substantial gainful activity since her alleged onset date of January 1, 2003. *Id.* at 10. At step two, the ALJ found that Biggs suffered from the following severe impairments: "back disorders: osteoarthrosis and allied disorder." *Id.* at 10-11. At step three, the ALJ found that Bigg's impairments, or a combination of those impairments, did not meet or medically equal a listed impairment. *Id.* at 11. At step four, the ALJ found that Biggs could perform her past relevant work and accordingly concluded that she was not disabled. *Id.* at 14.

Biggs appealed the ALJ's decision to the Appeals Council. *Id.* at 4. The Appeals Council denied her request for review. *Id.* at 1-3. Biggs therefore filed this appeal.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Vasquez v. Astrue*, 547 F.3d 1101, 1104 (9th Cir. 2008) (citation omitted). The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). If evidence supports more than one rational interpretation, the court upholds the Commissioner's decision. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038 (citation omitted).

## DISCUSSION

Biggs contends the ALJ erred in several respects. Specifically, Biggs argues that the ALJ erred in failing to find that her knee impairment, hip bursitis and obesity constituted severe impairments. Biggs further asserts that the ALJ neglected his duty to develop the record concerning those impairments and a possible mental impairment. Biggs also argues that the ALJ improperly rejected her testimony regarding the severity of her symptoms. Finally, Biggs

contends that the ALJ erred at step four because the ALJ did not inquire whether the vocational

expert testimony was consistent with the *Dictionary of Occupational Titles*.

## I.      Severity Determination

An ALJ can find an impairment not severe "only if the evidence establishes a slight

abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen*

*v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citations omitted). Moreover, the ALJ must

"consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity."

*Id.* (citation omitted). Thus, "the step-two inquiry is a de minimis screening device to dispose of

groundless claims." *Id.* (citation omitted).

An ALJ's erroneous finding that an impairment is not severe, however, constitutes

harmless error if the ALJ resolves step two in the claimant's favor and properly considers

limitations imposed by the impairment at other steps of the sequential process. *Lewis v. Astrue*,

498 F.3d 909, 911 (9th Cir. 2007) (ALJ's failure to discuss the claimant's bursitis in the severity

determination was harmless where the ALJ considered limitations posed by bursitis in step four

of the sequential evaluation process); *Burch v. Barnhart*, 400 F.3d 676, 682-683 (9th Cir. 2005)

(assuming that the ALJ erred when he found the claimant's obesity was not severe, that error was

harmless because the ALJ considered obesity in making his determinations regarding the

claimant's residual functional capacity and vocational ability).

Here, Biggs argues that the ALJ erred in finding that her knee, hip and obesity

impairments were not severe. The record shows that Biggs suffered from mild degenerative joint

disease of the knee, trochanteric bursitis, obesity and diabetes. (Tr. 214, 225, 236, 240.) The

ALJ, however, found that Biggs' osteoarthrosis and allied disorders were her sole severe

impairments. *Id.* at 10.

By concluding that Biggs' osteoarthrosis and allied disorders constituted severe impairments, the ALJ resolved step two in Biggs' favor. Thus, even if the ALJ erred when he concluded that Biggs' knee and hip impairments and obesity were not severe, that error was harmless if the ALJ properly considered all of Biggs' limitations at the other steps of the sequential process. Moreover, Biggs concedes that the ALJ's finding concerning osteoarthrosis and allied disorders could have encompassed her knee and hip impairments. (Pl.'s Reply Br., #36, at 1-2). Rather, Biggs argues that the ALJ's residual functional capacity determination failed to properly consider all of her limitations. I do not address that issue, however, because I find that the ALJ lacked sufficient evidence to reach a disability determination, as explained below.

## II.    Duty to Develop the Record

"In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (citation omitted). Moreover, "the ALJ must be especially diligent in exploring for all the relevant facts" when the claimant is unrepresented. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citation omitted). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." *Id.* (ALJ erred when he relied on physician's equivocal testimony and ignored the physician's concerns that the record was inadequate to assess the claimant's mental impairments); *Reed v. Massanari*, 270 F.3d 838, 843 (9th Cir. 2001) (ALJ erred in failing to order a consultative examination when the ALJ recognized the need for an

exam and refused to order one merely because he did not trust the available physicians);

*Thompson v. Schweiker,* 665 F.2d 936, 939-941 (9th Cir. 1982) (ALJ erred in failing to inquire

further about the claimant's impairments when a medical expert testified that the claimant's

symptoms were acute at times, the treating physician indicated that the claimant's epileptic

seizures prevented him from working, and the evidence showed that some impairments had

worsened).

### A.    Record of Mental Impairments

Biggs argues that the ALJ failed to develop the record regarding her mental impairments.

First, Biggs maintains that the ALJ should have ordered a consultative examination regarding her

mental impairments because she indicated that she suffered from depression and because she

reported a difficulty with reading comprehension. (Tr. 58, 104, 142.) Second, she argues that

the ALJ improperly relied on an outdated medical consultant opinion. I address each argument

below.

The ALJ found no evidence to suggest that Biggs experienced more than mild depression,

at worst. *Id.* at 13. The ALJ relied on a medical consultant's opinion, which indicated that no

medically determinable impairment was present. *Id.* The consultant accurately cited to evidence

in the record to support his conclusion, including that Biggs did not complain of or show signs of

mental health problems during her many doctors' visits, except one, when she was crying. *Id.* at

189, 215, 225, 228-230, 240, 242. The consultant also accurately noted that Biggs self-reported

that she visits friends and family as often as she can, uses public transportation alone, performs

household chores, pays bills and handles money, and that she handles stress well. *Id.* at132, 135,

140, 141, 143, 189. In addition, the consultant noted that Biggs indicated that she took

Trazodone to sleep, although she later said she took it for depression. *Id.* at 23, 131, 189. Moreover, other evidence in the record supported the opinion, including a doctor's note that Biggs had no identified barriers to learning and Biggs' work history, which included computer training, typing and data entry. *Id.* at 21, 119, 123, 220.

Biggs, however, contends that the ALJ erred when he relied on the medical consultant's opinion because the opinion was outdated. The consultant issued his opinion in November 2006. In February 2007, Biggs indicated that her depression was worse, that she suffered from anxiety attacks, and that she was taking more medication, including Prozac. *Id.* at 159-161.

I find Biggs' argument unpersuasive because the ALJ explored Biggs' complaints of worsening depression. The ALJ elicited testimony regarding Biggs' alleged depression at the 2008 hearing. Biggs testified that her physician gave her Prozac but she currently took Trazodone for depression. *Id.* at 23. She further testified that the Trazodone helped her, and that she was not seeing a doctor for mental health issues. *Id.* at 23-24. Moreover, the ALJ obtained a summary of Biggs' medications from 2006 through 2007 which showed that Biggs did not have a prescription for Prozac. *Id.* at 164-167. In addition, the ALJ obtained recent medical records, which included treatment for a laceration in December 2007, but no mention of depression. *Id.* at 167-176. Thus, although Biggs testified at the hearing that she needed to see a doctor or counselor but could not afford one, *id.* at 24, 32, the ALJ had ample reason to rely on the medical consultant's opinion instead of Biggs' report of worsening symptoms.

"The findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996). Here, the ALJ relied on the medical consultant's opinion to

conclude that Biggs did not suffer from a mental impairment and the record supported the

consultant's findings.  Moreover, the ALJ inquired into whether Biggs' depression had worsened

as she claimed.  Thus, I find that the ALJ did not fail to properly develop the record of Biggs'

alleged mental impairments.  *See Mayes v. Massanari*, 276 F.3d 453, 459-461 (9th Cir. 2001)

(ALJ had no duty to develop the record where claimant obtained a diagnosis after the hearing but

the record at the time of the hearing was neither ambiguous nor inadequate to allow for proper

evaluation of the evidence).

### B.    Record of Physical Impairments

Biggs argues that the ALJ failed to develop the record regarding her physical

impairments because he should have contacted her treating physician, Dr. Kono, to obtain

additional evidence.  Specifically, Biggs refers to a chart note by Dr. Kono stating that he sent

her a letter and argues that the ALJ should have requested a copy of the letter.  Biggs further

argues that the ALJ should have submitted a questionnaire to Dr. Kono because the record was

insufficient with regard to her residual functional capacity.

Biggs's first argument is without merit.  The mere mention of a letter does not render the

record ambiguous.  As a result, the ALJ had no duty to obtain the letter before rendering his

opinion.

Biggs' second argument is persuasive in light of the fact that the medical record regarding

her physical impairments was ambiguous.  The record contains no opinion from Dr. Kono,

although Biggs requested a disability letter in 2004.  *Id.* at 236.  The ALJ found that Biggs could

lift 10 pounds frequently and 20 pounds occasionally, could stand or walk two hours in an eight

hour day and sit for six hours and could occasionally climb, balance, kneel, crouch or crawl.  *Id.*

at 13. The ALJ's conclusion reflects a medical consultant's physical residual functional capacity assessment, with the exception that the consultant found that Biggs could stand or walk for six hours, not two. *Id.* at 192-198. Another medical consultant affirmed the residual functional capacity assessment following Biggs' request for reconsideration. *Id.* at 251.

The medical consultants relied on medical records that are inconsistent in places. An April 13, 2004 orthopedic exam found Biggs' knees were "essentially normal" but note "mild degenerative change beginning in the right knee." *Id.* at 234. In addition, a note from Dr. Kono in July 27, 2004 shows an "essentially negative" x-ray regarding Biggs' right knee pain. *Id.* at 227. An x-ray conducted in August 2003, however, notes it was positive for "spurs on patella and joint." *Id.* at 241. The note from a July 2003 x-ray of the right knee merely states "no acute change." *Id.* at 242.

The medical consultants' assessments are also deficient in other respects. Although the first assessment accurately noted the results of a May 11, 2006 knee evaluation and that Dr. Kono diagnosed Biggs with "probable trochanteric bursitis," it provides no explanation regarding the meaning of those results in relation to Biggs' functional capacity. *Id.* at 198, 225. More importantly, the assessment also referred to medical records from May 22, 2006 regarding Biggs' mild degenerative joint disease in her right knee and degenerative disk disease in the lumbosacral spine, but those records do not appear in the administrative record. *Id.* at 198, 217-219. In addition, the initial assessment does not mention Biggs' obesity and whether it plays a part in the severity of her symptoms. *Id.* at 198.

In summary, due to the inconsistencies in the medical record, the paucity of explanation in the physical residual functional capacity assessment and the missing May 22, 2006 records,

the ALJ faced an ambiguous record concerning Biggs' physical impairments. The ALJ therefore had a duty to develop the record further, particularly in light of the fact that Biggs was not represented by counsel. *See Celaya v. Halter*, 332 F.3d 1177, 1184 (9th Cir. 2003) (holding the ALJ improperly relied on a physical residual capacity assessment that included no explanation for its conclusions and that appeared to ignore medical findings in the record); *see also* 20 C.F.R. §§ 404.1512(e), 416.912(e). The court should therefore remand this matter the to the ALJ.

Upon remand, the ALJ should recontact Dr. Kono to obtain the missing May 22, 2006 records referred to in the medical consultant reports and to request his opinion concerning Bigg's ability to work. See 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1). If Dr. Kono is unable or unwilling to provide more information, then the ALJ should order a consultative evaluation. See 20 C.F.R. §§ 404.1512(f), 416.912(f).

## III.    Claimant Credibility

An ALJ must evaluate a claimant's credibility by engaging in a two-step analysis. *Vasquez*, 547 F.3d at 1104-1105 (citation omitted). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (citation omitted). "If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Id.* (citations omitted).

Here, the ALJ necessarily found that Biggs produced objective medical evidence of her impairments when he resolved step two in her favor. (Tr. 10.) In addition, the ALJ did not affirmatively find that Biggs was malingering. Thus, the ALJ was required to set forth specific,

clear and convincing reasons to reject Biggs' testimony. Biggs argues that the ALJ's rejection of her testimony did not meet that standard.

An ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991) (citation omitted). "A reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." *Id.* (citation omitted); *Vasquez* , 547 F.3d at 1105 (ALJ improperly rejected claimant's testimony based solely on the "discrepancies between the claimant's assertions and information contained in the reports of the treating and examining physicians" without making specific findings); *Robbins v. Soc. Security Admin.*, 466 F.3d 880, 884-885 (9th Cir. 2006) (ALJ improperly rejected claimant's testimony when he provided no "meaningful explanation" or citation to the record to support his finding that the testimony was "equivocal" and not supported by the medical evidence); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (ALJ improperly rejected claimant's testimony as not credible when she failed to provide any specific reasons for her disbelief other than a lack of objective evidence).

Here, the ALJ found that Biggs' statements concerning the "intensity, persistence and limiting effects" of her symptoms were "not entirely credible." *Id.* at 13. The ALJ then discussed the physical residual functional capacity assessment, Biggs' attempts to work at two fast food restaurants, and her report that she walks a little each morning, gets her son off to school and prepares meals for him. *Id.* The ALJ concluded that Biggs' testimony concerning the severity of her pain was "not supported by the record as a whole" and that "the lack of substantial

findings with respect to her impairment place[d] her allegations in doubt." *Id.*

On remand, the ALJ should clarify the basis for his credibility finding. Although the ALJ most likely relied on the residual functional capacity assessment, Biggs' attempt at work and her daily activities as the basis for his credibility finding, his reference to "the record as a whole" places that inference in doubt. Moreover, as noted above, the ALJ must seek Dr. Kono's opinion or a consultative examination and thus should revisit his credibility finding after supplementing the record.

## IV. Deviation from the Dictionary of Occupational Titles

"At step four, claimants have the burden of showing that they can no longer perform their past relevant work." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). The ALJ, however, must make findings regarding the claimant's residual functional capacity and the physical and mental demands of the past relevant work. *Id.* The claimant must be able to perform the actual functional demands and duties of a particular past job, or the functional demands and job duties of the occupation as generally performed in the national economy. *Id.* The ALJ may rely on a claimant's testimony to determine the requirements of the claimant's past work as actually performed. *Id.* at 845. The *Dictionary of Occupational Titles* is usually the "best source for how a job is generally performed." *Id.* at 846.

The ALJ, however, may accept vocational expert testimony that conflicts with the *Dictionary of Occupational Titles* if the record contains persuasive evidence to support the deviation. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). The ALJ must first determine whether a conflict exists. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). If a conflict exists, "the ALJ must then determine whether the vocational expert's explanation for

the conflict is reasonable and whether a basis exists for relying on the expert rather than the *Dictionary of Occupational Titles*." *Id.* An ALJ's failure to make that determination is harmless, however, if there is no conflict between the vocational expert testimony and the *Dictionary of Occupational Titles*, or if vocational expert provided sufficient support for her conclusion so as to justify potential conflicts. *Id.* at 1154 n. 19.

Here, Biggs argues that the ALJ erred by failing to inquire whether the vocational expert testimony conflicted with the *Dictionary of Occupational Titles.* Biggs, however, does not explain how the vocational expert's testimony conflicts with the *Dictionary of Occupational Titles.* Moreover, it is not clear from the record whether the ALJ relied on the *Dictionary of Occupational Titles* or instead looked to Biggs' past work as actually performed when making his step four determination. I do not need to resolve the matter, however, because the ALJ must make a new step four finding after supplementing the record concerning Biggs' physical residual functional capacity. On remand, the ALJ should clarify the basis for his step four findings. If the step four finding relies on vocational expert testimony, he should inquire whether that testimony conflicts with the *Dictionary of Occupational Titles. See Massachi*, 486 F.3d at 1153.

## CONCLUSION

The Commissioner's decision should be remanded for further proceedings consistent with this Findings and Recommendation.

/ / /

/ / /

/ / /

/ / /

Page 13 - FINDINGS AND RECOMMENDATION

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.  If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 4th day of March, 2010.

Honorable Paul Papak
United States Magistrate Judge